RECORD NO. 13-1031

In The

# United States Court of Appeals
For The Fourth Circuit

**JOSEPH ANTONIO; BULAN JULES-ANTONIO; MICHAEL CLARK; CAROLYN CLARK; THOMAS COOPER; ANGEL FOUNTAIN-COOPER; GREG GIBBS; NATALIE GIBBS; GEORGE HALEY; YVONNE HALEY; JACQUE HIGHTOWER; DAWN HIGHTOWER; KHARI JACKSON; BELINDA JACKSON; HAROLD JEWETT; CYNTHIA JEWETT; MICHAEL JOHNSON; CRYSTAL JOHNSON; JAGATH KANKANAMAGE; KETH KANKANAMAGE; KEITH ROBINSON; TAKEYSHA ROBINSON; EVERTON ROWE; BEVERLY ROWE; ERIK SMITH; SHARON SMITH; LEONARD SWOOPES; EVORA SWOOPES; KENDALL WALKER; SAMANTHA WALKER,**

*Plaintiffs – Appellants*,

**and**

**DERRICK POTTS; TERRI ROOKARD,**

*Plaintiffs,*

**v.**

**SSA SECURITY, INC., d/b/a Security Services of America,**

*Defendant – Appellee*,

**and**

**JEREMY DANIEL PARADY; PATRICK STEPHEN WALSH; MICHAEL MCINTOSH EVERHART; ROY THOMAS MCCANN; SECURITY SERVICES OF AMERICA, LLC; ABM INDUSTRIES, INC.; AARON LEE SPEED**

*Defendants.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND AT GREENBELT

_____

## BRIEF OF APPELLEE

_____

Gary A. Bryant
Joseph P. Moriarty
J. David Crain
WILLCOX & SAVAGE, PC
440 Monticello Avenue, Suite 2200
Norfolk, Virginia  23510
(757) 628-5520

Gerry H. Tostanoski
TYDINGS & ROSENBERG, LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland  21202
(410) 752-9733

*Counsel for Appellee*                    *Counsel for Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-1031__      Caption: __Joseph Antonio et al. v. SSA Security, Inc. et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__SSA Security, Inc.__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
       ABM Industries, Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☑ YES ☐ NO
      If yes, identify all such owners:
       ABM Industries, Inc.

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Jerome David Crain, Jr.　　　　　　Date: 　01/22/2013

Counsel for: SSA Security, Inc., Appellee

## CERTIFICATE OF SERVICE
**************************

I certify that on 　January 22, 2013　 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Jerome David Crain, Jr.　　　　　　　　1/22/2013
　　　　(signature)　　　　　　　　　　　　　　　(date)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT OF THE ISSUES...........................................................1

STATEMENT OF THE CASE................................................................1

STATEMENT OF FACTS ......................................................................2

    A.    Appellants.................................................................2

    B.    Security Services Provided At Hunters Brooke ....................3

    C.    Arsons..................................................................4

    D.    The Developer Litigation ....................................................5

SUMMARY OF ARGUMENT ..............................................................7

STANDARD OF REVIEW ....................................................................9

ARGUMENT ........................................................................................10

    I.    SSA IS NOT VICARIOUSLY LIABLE UNDER THE
        MARYLAND SECURITY GUARD ACT.........................................10

        A.    The Plain Language Of The Statute Limits Liability To
            Acts Performed While Conducting The Business Of The
            Agency ................................................................................10

        B.    The Legislative History Does Not Change The Plain
            Meaning ..............................................................................14

        C.    The Cases That Appellants Cited From Other
            Jurisdictions Do Not Change The Statute's Plain
            Meaning ..............................................................................19

II.    THE NEGLIGENCE-BASED CLAIMS WERE PROPERLY DISMISSED BECAUSE APPELLANTS DID NOT OWN PROPERTY AND WERE NOT WITHIN THE ZONE OF DANGER AT THE TIME OF THE ARSONS ................................23

       A.    Appellants' Standard Of Care Arguments Are Irrelevant To The District Court's Dismissal Of The Negligence-Based Claims............................................................................23

       B.    Appellants Not Living At Hunters Brooke At The Time Of The Arsons Were Not In The Zone Of Danger, Did Not Suffer Property Damage And, Thus, Cannot Recover Emotional Distress Damages Under A Negligence Theory ......................................................................24

III.   THE    DISTRICT    COURT    PROPERLY    DENIED APPELLANTS' MOTION TO CERTIFY A QUESTION TO THE MARYLAND COURT OF APPEALS ......................................30

       A.    The District Court Did Not Abuse Its Discretion In Denying Appellants' Request For Certification ......................30

       B.    Maryland Laws Governing Statutory Construction And Vicarious Liability Are Not Novel And Do Not Require Interpretation By The Maryland Court Of Appeals.................32

       C.    Appellants' Proposed Certified Question Would Not Be Case Determinative ..................................................34

             1.    Speed was off-duty when he committed the intentional arsons that allegedly caused Appellants' claimed damages..........................................34

             2.    Even if SSA was liable for Fitzpatrick's alleged negligence the damages sought by Appellants are not recoverable as a matter of law ..................................35

CONCLUSION ....................................................................................................36

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abbott v. Forest Hill State Bank*,
    60 Md. App. 447 (1984) ..............................................................................25

*Anderson v. State*,
    61 Md. App. 436 (1984) ..............................................................................17

*Apex Smelting Co. v. Burns*,
    175 F.2d 978 (7th Cir. 1949) ......................................................................21

*Automobile Trade Ass'n v. Insurance Comm'nr*,
    292 Md. 15 (1981) .......................................................................................16

*Axis Specialty Europe Ltd.*, *as Subrogee of Patriot
Homes, Inc. and U.S. Home Corporation et al. v.
Security Services of America, LLC*,
    Civil Action No. AW-05-2003 .....................................................................29

*Bentley v. Carroll*,
    355 Md. 312 (1999) .....................................................................................11

*Borg-Warner Protective Servs. Corp. v. Superior Court.*,
    89 Cal. Rptr. 2d 687 (Cal. Ct. App. 1999)........................................13, 20, 21

*Bost v. State*,
    406 Md. 341 (2008) .....................................................................................14

*Brotherhood Mut. Ins. Co. v. McMillan*,
    492 Fed. Appx. 389, 2012 WL 3105150 (4th Cir. Aug. 1, 2012) ................33

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................. 9-10

*Dhanraj v. Potomac Elec. Power Co.*,
    305 Md. 623 (1985) .....................................................................................18

*Dobbins v. Wash. Suburban Sanitary Comm'n*,
  338 Md. 341 (1995) ..................................................................25

*Embrey v. Holly*,
  293 Md. 128 (1982) ..................................................................18

*Gainsburg v. Steben & Co., Inc.*,
  2013 WL 1789730 (4th Cir. Apr. 29, 2013)...................................10

*Gates v. Sprint Spectrum, L.P.*,
  523 F. Supp. 2d 1287 (D. Kan. 2007) ....................................26, 28

*Hamilton v. Ford Motor Credit Co.*,
  502 A.2d 1057 (1986)...............................................................24

*Hoffman v. Stamper*,
  385 Md. 1 (2005) .....................................................................25

*Hoover Ball & Bearing Co. v. Pinkerton's, Inc.*,
  500 F. Supp. 673 (W.D. Mich. 1980)..........................................20

*Johnson v. Collins Entm't Co., Inc.*
  199 F.3d 710 (4th Cir. 1999) .....................................................31

*Jones v. State*,
  336 Md. 255 (1994) ..................................................................32

*Jordan v. W. Distrib. Co.*,
  135 Fed. Appx. 582 (4th Cir. 2005) ............................................13

*Knouse Foods Co-op., Inc. v. Burns Int'l Sec. Servs. Inc.*,
  519 F. Supp. 867 (E.D. Pa. 1981)...............................................13

*Laber v. Harvey*,
  438 F.3d 404 (4th Cir. 2006) .......................................................9

*Lee v. Pfeifer*,
  916 F. Supp. 501 (D. Md. 1996)...................................................5

*Lehman Bros. v. Schein*,
　416 U.S. 386 (1974)....................................................................................10

*Lutz v. State*,
　167 Md. 12 (1934) ....................................................................................17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
　475 U.S. 574 (1986)..................................................................................10

*Moura v. Randall*,
　119 Md. App. 632, *cert. denied*,
　709 A.2d 140 (Md. 1998) ..........................................................................11

*NRC Corp. v. Comptroller*,
　313 Md. 118 (1988) ..................................................................................16

*Oaks v. Connors*,
　339 Md. 24 (1995) ....................................................................................32

*Pahanish v. Western Ttrails, Inc.*,
　69 Md. App. 342 (1986) ............................................................................11

*Potomac Constructors, LLC v. EFCO Corp.*,
　530 F. Supp. 2d 737 (D. Md. 2008)...........................................................27

*Public Citizen, Health Research Grp. v. Comm'n on Med. Discipline of Md.*,
　573 F.2d 863 (4th Cir. 1978) .....................................................................10

*Rabon v. Guardsmark, Inc.*,
　571 F.2d 1271 (4th Cir. 1978) ...................................................................12

*Robinson v. State*,
　728 A.2d 698 (1999)..................................................................................33

*Simmons, Inc. v. Pinkerton's, Inc.*,
　762 F.2d 591 (7th Cir. 1985) ........................................................19, 21, 22

*State v. Bell*,
　351 Md. 709 (1998) ..................................................................................16

vi

*State, for Use of Aronoff v. Baltimore Transit Co.*,
    197 Md. 528 (1951) ...........................................................................25

*Stewart Warner Corp. v. Burns Int'l Sec. Servs., Inc.*,
    353 F. Supp. 1387 (N.D. Ill. 1973).................................................19, 21, 22

*Suter v. Stuckey*,
    402 Md. 211 (2007) ......................................................................17, 18, 33

*White v. Simard*,
    152 Md. App. 229 (2003), *aff'd*,
    383 Md. 257 (2004) ...........................................................................27

*Zeigler v. F St. Corp.*,
    248 Md. 223 (1967) ......................................................................25, 26

## STATUTES

42 U.S.C. § 1982 ..................................................................................2

42 U.S.C. § 1985(3) .............................................................................2

42 U.S.C. §§ 3601 *et seq.*....................................................................2

Ill. Rev. Stat. ch. 38, § 201-10b(10) .......................................................19

Ind. Code § 25-30-1-11 .........................................................................19

Md. Code Ann., Bus. & Prof. § 7582.15 .................................................20

Md. Code Ann., Bus. Occ. & Prof. § 13-601....................................15, 18

Md. Code Ann., Bus. Occ. & Prof. § 19-501........................................11

Md. Code Ann., Cts & Jud. Proc. § 12-603 ...........................................31

**RULES**

Fed. R. Civ. P. 56 ........................................................................9

Fed. R. Civ. P. 56(c) ...................................................................9

**OTHER AUTHORITY**

MCLA 338.1067(1) .....................................................................20

## STATEMENT OF THE ISSUES

The issues presented in Appellants' appeal are:

1.    Whether the District Court correctly granted summary judgment in favor of Appellee on Appellants' claims under the Maryland Security Guard Act?

2.    Whether the District Court abused its discretion in denying Appellants' request to certify the question on the Maryland Security Guard Act to the Maryland Court of Appeals?

3.    Whether the District Court correctly granted summary judgment in favor of Appellee on Appellants' negligence-based claims?

## STATEMENT OF THE CASE

Appellants brought a civil suit against SSA Security, Inc. ("SSA") and other defendants in 2005 alleging they suffered emotional distress and economic losses as the result of the arsons at the Hunters Brooke neighborhood of Indian Head, Maryland on December 6, 2004.  Appellants sought to hold a security company liable for the extreme conduct of one of its off-duty security guards who participated in a criminal conspiracy to burn down a residential subdivision. Appellants brought their claims under a variety of theories, but all their claims against SSA were dismissed on summary judgment by the District

1

Court.[1]  Appellants did not appeal the District Court's dismissal on summary judgment of their civil rights claims against SSA asserted under 42 U.S.C. § 1982, 42 U.S.C. § 1985(3), and the Fair Housing Act (42 U.S.C. §§ 3601 *et seq.*).  JA 142.  Appellants did not appeal the District Court's dismissal on summary judgment of their claims against SSA for intentional infliction of emotional distress.  *Id.*  Appellants did not appeal the District Court's dismissal on summary judgment of their contract-based claims against SSA.  *Id.*  Instead, Appellants limited their appeal to the Court's dismissal on summary judgment of their negligence-based claims against SSA.

## STATEMENT OF FACTS

### A.    Appellants

Appellants are current or former owners of houses in the Hunters Brooke neighborhood in Indian Head, Maryland.  JA 061.  However, at the time of the arsons, the lots in Hunters Brooke were owned by two developers: U.S. Home Corporation and Patriot Homes, Inc, both of which are wholly-owned subsidiaries of Lennar Homes, Inc. (collectively, the "Developer").   JA 065.   Appellants

---

[1]  The only claims against SSA that survived summary judgment were the negligence-based claims asserted by the only two plaintiffs (Terri Rookard and Derrick Potts) living at Hunters Brooke at the time of the arsons, but those claims settled before trial and SSA obtained a release of all claims without admitting liability.  Also, all plaintiffs' claims against the individual defendants survived summary judgment, but they were later voluntarily dismissed after the Court granted SSA's motion to bifurcate trial as to SSA and the individual defendants.

2

entered into contracts with the Developer to purchase houses in Hunters Brooke before the arsons.  *See* JA 191-215 (a representative copy of Appellants' contract with Patriot Homes, Inc. ("Patriot")).  None of the Appellants had either closed on their houses or taken possession of the properties before the arsons.  JA 068. Appellants all closed after the Developer completed the houses after the arsons.

### B.    Security Services Provided At Hunters Brooke

SSA provided security services at Hunters Brooke for approximately three weeks, starting on November 12, 2004, until the arsons on December 6, 2004.  JA 229.  There was never a final contract between the Developer and SSA prior to the arsons.  The terms of the contract were still being negotiated at the time the arsons occurred.  JA 436-38.  The Developer had submitted its standard subcontractor agreement and SSA proposed certain revisions.  JA 232-46.  The draft versions of the contract between SSA and the Developer, however, never contemplated Appellants as third-party beneficiaries.  JA 232-46.  SSA specifically did not intend for Appellants to be third-party beneficiaries of the agreement with the Developer.  JA 247.  In addition, the Developer also did not intend for Appellants to be third-party beneficiaries of its agreement with SSA.  JA 250-55.  The District Court dismissed Appellants' breach of contract claim because Plaintiffs were not third-party beneficiaries of the agreement between SSA and the Developer (*see* JA 101-03), and that ruling was not appealed.  Thus, Appellants' repeated citation to

SSA's marketing material is irrelevant. *See* Appellants' Opening Br. at 12 ("SSA's Promises to Protect"). Appellants cannot convert their meritless contract-based claims into a negligence-based claim.

SSA employed Aaron Speed and William Fitzpatrick as security guards at the time of the arsons. Fitzpatrick was licensed and was therefore screened by the state of Maryland, in accordance with SSA's procedures and with state licensing requirements. JA 256. Although Speed's paperwork was not properly submitted to the State, he did not have a criminal background as an adult, and, therefore was licensable.

### C.    Arsons

Appellants allege the individual defendants, who were all voluntarily dismissed from the civil suit prior to this appeal, conspired to burn, damage, and destroy houses in Hunters Brooke with the intent to prevent African-American families from moving into the neighborhood. JA 059-60, 071-72, and 074-75. Appellants did not allege, nor could they allege, that SSA had a discriminatory policy or that it directly participated in the criminal conspiracy. JA 068, 071-72, 074-75, and 119-21.

Appellants allege the last shift Speed was assigned to work before the arsons at Hunters Brooke was on the night of December 3, 2004. JA 069-70. Appellants do not and cannot allege that Speed was actually working for SSA on the night of

the arsons. Fitzpatrick was assigned as a security guard at Hunters Brooke on December 5-6, 2004 (the night/early morning of the arsons) from 6:00 p.m. to 5:00 a.m. JA 230. Appellants allege that before his shift ended Fitzpatrick prematurely left his post. JA 067-68. Appellants, however, have proffered no proof that Fitzpatrick was in any way involved in the conspiracy. Fitzpatrick had no history of abandoning his post or other disciplinary problems in the past. JA 469.[2]

### D. The Developer Litigation

Within days of the arsons, Appellants pressured the Developer to compensate them for damages suffered as a result of the fires and any associated delays. JA 259-60 (E-mail correspondence between Rowe and Antonio families regarding making demands on Patriot on issues, including: "a) emotional stress of this event, uncertainty of the events which lead to this, Patriots responsibilities/guarantees in this, b) financial obligation to us buyers (rent, storage, etc.), c) what does it mean for buyers who have locked-in their interest rate among other things, d) all the financial burden, e) security going forward,

---

[2] Without appealing the District Court's rejection of their ratification theory, *see* JA 111, Appellants contend that SSA advised guards to lie about Speed's license, or to state that Fitzpatrick did not leave his post early. *See* Appellants' Opening Br. at 19. While not rising to the bait to respond to these inflammatory contentions, any alleged "cover up" involving either the status of Speed's license or Fitzpatrick's log did not amount to ratification. Even when taken together, and even when giving Appellants the benefit of all reasonable inferences, these alleged acts fall far short of the proof necessary to meet their burden under a ratification theory, which requires that the "master has knowledge of all material facts and *specifically approves* them." *Lee v. Pfeifer*, 916 F. Supp. 501, 508 (D. Md. 1996).

f) others" and "We need to let Patriot know that we want some compensation for the delay.").  The Developer offered the following additional compensation and benefits to Appellants after the arsons:

(a)    The Developer offered to cancel the purchase contract and refund all sums paid under the contract if any plaintiff decided not to close.  JA 261-306.  No plaintiff accepted this offer.

(b)    The Developer paid an additional amount towards Appellants' closing costs commensurate with the amount of delay anticipated in completing their house after the arsons.  JA 307 and 380 ("depending on the length of the delay, there was an exaggerated schedule that the longer the delay, the more closing help I guess or credit you would get").

(c)    The Developer allowed Appellants to make changes to their plans after the arsons without the imposition of the $500 or $1000 per item change-order fee.  JA 381-82 and 384-85.

(d)    The Developer provided individual Appellants with additional consideration on a case-by-case basis.

The Developer used insurance proceeds from its insurer to pay for the repair costs and additional expenses incurred.  JA 390.  In turn, the insurance companies, as the Developer's subrogees, filed a lawsuit against SSA on July 22, 2005, in which they sought to recover payments they made to the Developer under the

Developer's property insurance policies.  JA 386-93.  SSA settled all of those claims by making a lump-sum payment to the Developer's subrogees and obtained a release of all claims without admitting liability.  JA 227-28.

## SUMMARY OF ARGUMENT

The District Court had little trouble dismissing Appellants' common law negligence claims on the basis that the alleged damages were not recoverable under any theory of negligence.  The ruling renders moot all other appeal issues.  While Appellants challenge the ruling, their arguments missed the mark, as they focused almost exclusively on the standard of care, which is entirely irrelevant if Appellants seek damages which cannot be recovered *regardless* of whether Appellee breached the standard of care.  *See* JA 168 (wherein the District Court noted "SSA does not seek summary judgment on the grounds that it did not breach its standard of care.  Rather, SSA argues that [Appellants'] negligence-based claims fail as a matter of law because [Appellants] experienced only emotional distress and economic loss damages, which are insufficient to sustain a negligence claim under Maryland law.") (internal citation omitted).  As the District Court properly held, because Appellants were not living in the neighborhood at the time of the arsons and had not purchased the property, they were not in the zone of danger.  As a result, they did not and could not suffer property damage, without which they could not recover emotional distress damages under any negligence theory.

7

With no basis for recovering under common law negligence, Appellants press their contention that the Maryland Security Guard Act totally abrogates *respondeat superior*, making employers absolutely and strictly liable for the conduct of any employee *regardless* of whether the employee was conducting the business of the employer. Appellants contend that the District Court abused its discretion in failing to certify this issue to the Maryland Court of Appeals. A simple review of the District Court's opinion makes clear that its resolution of the issue was entirely within its discretion. The language of the statute is clear, and the issues raised are not novel, nor do they require interpretation by a Maryland state court.

The District Court properly rejected liability, and rightly interpreted the statute as imposing liability only when the employee is conducting the business of the agency. The reason the District Court's interpretation is clear is because that is what the statute says. Specifically, the statute imposes liability on an agency for the acts of an employee "while the employee is conducting the business of the agency." Appellants' interpretation would read this requirement completely out of the statute, which the District Court should not and would not do. Neither the legislative history nor case law from other jurisdictions can change the plain language of the statute. Liability attaches if, and only if, the employee is conducting the business of the agency. There is no dispute that the security guards at issue in the instant case *were not* conducting the business of the Appellee. As a

result, the District Court properly dismissed any claim based on a violation of the Maryland Security Guard Act.

But the application of the Maryland Security Guard Act in the instant case is not dispositive. Even if the Appellants could somehow read out of the statute any requirement that an employee be conducting the business of the employer, the Appellants' claims still fail. Whether liability is statutory or based on the violation of some negligence standard, the Appellants cannot recover because they were not within the zone of danger, and as a result they have no property or emotional distress damages. Because the District Court properly concluded that the Appellants did not own the property and were not within the zone of danger, the entire case fails.

## STANDARD OF REVIEW

The Fourth Circuit reviews *de novo* the district court's grant of summary judgment. *See Laber v. Harvey*, 438 F.3d 404, 415 (4th Cir. 2006). Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A court should enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986).  Once the moving party has established that the evidence is insufficient to support the nonmoving party's case, the burden then shifts to the nonmoving party to present specific facts that establish that a genuine issue of material fact exists for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The decision to certify a question to a state court of last resort rests in the "sound discretion" of the district court.  *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).  Although discretionary, "mere difficultly in ascertaining local law is no excuse for remitting the parties to a state tribunal for the start of another lawsuit." *Id.* at 390-91.  District courts are given great deference on the issue of certification. *Gainsburg v. Steben & Co., Inc.*, 2013 WL 1789730 at fn* (4th Cir. Apr. 29, 2013).  Absent a clear abuse of discretion, the district court's decision to deny certification shall not be disturbed.  *Public Citizen, Health Research Grp. v. Comm'n on Med. Discipline of Md.*, 573 F.2d 863, 866 (4th Cir. 1978).

## ARGUMENT

## I.    SSA IS NOT VICARIOUSLY LIABLE UNDER THE MARYLAND SECURITY GUARD ACT

### A.    The Plain Language Of The Statute Limits Liability To Acts Performed While Conducting The Business Of The Agency

The District Court properly applied principles of statutory construction in interpreting the Maryland Security Guard Act at issue herein.  JA 104-05, 107.

The plain language of the Statute is not complex.  The relevant portion of the Statute provides in its entirety:  "A licensed security guard agency is responsible for the acts of each of its employees *while the employee is conducting the business of the agency*."  MD. CODE ANN., BUS. OCC. & PROF. § 19-501 (2004) (emphasis added).  SSA contends, and the District Court agreed, that the Statute imposes liability on security companies for actions taken by its employees "while … conducting the business of the agency," which is equivalent to conduct within the scope of employment or conduct taken on the agency's behalf.  JA 104. Appellants seek to avoid negligence concepts and enlarge the scope of recovery by relying on some sort of strict or absolute liability theory that is unprecedented under Maryland law.[3]

Appellants contend the Statute imposes strict or absolute liability, presumably for both tortious, intentional and criminal conduct of an employee. *See* Appellee's Opening Br. at 35-36.  To reach this result, Appellants focus exclusively on the temporal language; specifically, the use of the word "while."

---

[3] Under Maryland law, a violation of a statute or regulation does not constitute negligence *per se*, and only may provide evidence of negligence under certain circumstances.  *See Moura v. Randall*, 119 Md. App. 632, 648, 705 A.2d 334, 342, *cert. denied*, 709 A.2d 140 (Md. 1998); *Pahanish v. Western Ttrails, Inc.*, 69 Md. App. 342, 357, 517 A.2d 1122 (1986).  This is a rule of evidence, not a rule of law creating a cause of action.  *Bentley v. Carroll*, 355 Md. 312, 326-27, fn. 8, 734 A.2d 697, 705, fn. 8 (1999) ("the violation of a statute is evidenceof negligence strictly as a rule of evidence, and not as a rule of substantive law implying a cause of action within any given statute relied upon for such evidence").

Appellants argue that SSA is liable "not only for an employee's acts in 'conducting the business of the agency'—as understood in the common law doctrine of *respondeat superior*—but also for those additional acts that take place 'at the same time that' the employee is doing so, *e.g.*, for Speed's preparatory acts that he carried out 'while on duty.'" *See id.* at 35-36. Appellants focus on the definition of the term "while"—meaning "during a relevant period of time"—and then make the leap to construe the Statute to mean that security companies are liable for any and all actions taken while the employee is on duty.[4] In so doing, Appellants overlook the common, everyday meaning of the phrase "while … conducting the business of the agency." In the context of the present case, for example, a security guard would not be conducting the business of the agency while committing a crime, even if he was "on duty." *See Rabon v. Guardsmark, Inc.*, 571 F.2d 1271, 1279 (4th Cir. 1978) (upholding summary judgment where an employee's intentional criminal act was directly adverse to the employer's purpose, even when

---

[4] The irony, however, is that even under Appellants' interpretation of the Statute, SSA still is not liable to Appellants because it is undisputed that neither Speed nor Fitzpatrick was on duty at the time of the arsons. If Appellants' construction of the Statute depends on a finding that the act must have been taken while the guard is "on duty," then the Statute does not even apply under the undisputed facts. Assuming *arguendo* that SSA is liable for Speed's criminal preparation "while" on duty, absolutely no damages were caused by this alleged preparation the Friday before the arsons was committed. Further, Appellants allege that Fitzpatrick abandoned his post before the arsons. SSA, however, does not agree with Appellants' interpretation, and the Statute itself nowhere contains the phrase "on duty."

the employee was on duty and at his place of employment at the time of his crime); *see also Jordan v. W. Distrib. Co.*, 135 Fed. Appx. 582, 586 (4th Cir. 2005). Indeed, it defies logic to argue that Speed was "conducting the business" of a security company—whose business is to monitor for wrongful conduct —while committing or, in this case, preparing to commit arsons.

Furthermore, Appellants state the Statute imposes liability for acts "without qualification or exception."    *See* Appellee's Opening Br. at 34.    This pronouncement, however, overlooks that there is an express qualification in the Statute— the conduct must be "while . . . conducting the business of the agency." Appellants do not and cannot explain why this express limitation was included if it is meaningless, *i.e.*, not applicable to the outcome.    *See*, *e.g.*, *Borg-Warner Protective Servs. Corp. v. Superior Court.*, 89 Cal. Rptr. 2d 687, 689-90 (Cal. Ct. App. 1999) (noting that the phrase "in the business" of the agency was intended to limit conduct to acts within the scope of employment); *Knouse Foods Co-op., Inc. v. Burns Int'l Sec. Servs. Inc.*, 519 F. Supp. 867, 869 (E.D. Pa. 1981) (finding the phrase "in the business" in Pennsylvania's Private Detective Act[5] clearly and unambiguously imposes a scope of employment limitation on the employer's liability).    Appellants in effect ask this Court to truncate the Statute.    Appellants

---

[5] The relevant statutory provision stated:  "The holder of any license certificate issued pursuant to this act … shall at all times during such employment be legally responsible for the good conduct in the business of each and every person so employed." *Knouse*, 519 F. Supp. at 869.

exalt the first clause of the act ("[a] licensed security guard agency is responsible for the acts of each of its employees …."), while disregarding the limiting clause that follows ("while … conducting the business of the agency").

When interpreting a statute under Maryland law, all words must be given effect, and no part of the act can be considered to be superfluous. *Bost v. State*, 406 Md. 341, 350 (2008) ("[a] plain reading of the statute assumes none of its language is superfluous or nugatory."). Rather than construe the words as written, Appellants substitute their own language. For example, the phrase "on duty" is nowhere to be found in the Statute, yet that phrase is prominent in Appellants' interpretation. In fact, Appellants scramble to add their own qualification "while on duty" because they knew that the breadth of imposing liability for the conduct in the instant case would not (and did not) pass judicial muster. But it is the Legislature's function to draft the statute. The plain language of the Statue demonstrates the legislative intent and should end the inquiry.

## B.    The Legislative History Does Not Change The Plain Meaning

After arguing that the Statute is clear as written (which obviates the need to consider legislative history), Appellants then rely on legislative history to support their interpretation of the Statute. *See* Appellee's Opening Br. at 40-48. It is true that a court may look to the legislative history of a statute to discern its intended

14

meaning, but only if the language of the statute is ambiguous.[6]  *Bost*, 406 Md. at 350 (emphasis added).  In this context, however, reliance on the legislative history is inappropriate not only because the statutory language is ***clear***, but also because the legislative history is ***unclear***.  As an initial point, Appellants do not cite the legislative history of the Statute, and instead relied on the legislative history of a similarly worded statute, § 13-601 (the Maryland Private Detective Statute).  The legislative history of that statute is actually more confusing than the code section that the Legislature ultimately adopted.

Appellants surmise the Legislature specifically rejected a scope of employment limitation when enacting the Maryland Private Detective Statute, but, as recognized by the District Court, that deduction is mere guesswork and speculation.  JA 107.  The proposed amendment that Appellants reference actually used different language, limiting liability "if the acts are within the scope *of the subtitle*," and that is not defined further.  JA 782.[7]  More importantly, while the Legislature did not adopt the proposed amendment, the legislative history of § 13-601 never explains why it was not utilized.  There is no indication whether the proposed amendment was *rejected* (as the Appellants assumed), or whether the

---

[6] SSA respectfully disagrees with the District Court's conclusion that the Statute was ambiguous.  *See* JA 105.

[7] Senate Bill 968 ultimately became MD. CODE ANN., BUS. OCC. & PROF. § 13-601 (2004).

drafters believed that the Statute already imposed a scope of employment limitation by the plain language used.  As the District Court noted, the legislative history can just as easily be construed to mean that the proposed language was unnecessary because the Statute and existing common law already contained that limitation.  JA 107 (citing *State v. Bell*, 351 Md. 709, 721 (1998) ("Even a formal bill rejection is not as informative as legislative history, because it is difficult to deduce with any certainty the reasons for the rejection.").[8]

In fact, the Report on Senate Bill 968 emphasized that it did not intend to repeal existing law and policy:

> [I]t is important to note in this regard that for the most part, the proposals under the bill find their basis ***in actual law*** and practice and do not deviate substantially from ***the current law*** as it now is applied. There is no attempt under the revision to ***change existing underlying policy***.

JA 687 (emphasis added).  Rather than abolishing the longstanding principles of *respondeat superior*, as Appellants urge, the Legislature made clear that it did not

---

[8] The alleged presence of Senator Kelly's Amendment does not alter the result in this case.  The District Court's reasoning still applies as any proposed amendment — directly arising from an industry-stated concern — is not definitive on the issue of legislative intent.  Even assuming it is a rejected amendment "that is not an infallible indication of legislative intent . . ."  *NRC Corp. v. Comptroller*, 313 Md. 118, 125 (1988).  *See also Automobile Trade Ass'n v. Insurance Comm'nr*, 292 Md. 15, 24 (1981) (the rejection of a bill is a "rather weak reed upon which to lean in ascertaining legislative intent") (cited in *State v. Bell*, 351 Md. 709, 721 (1998)).

intend to deviate from "actual law" or "the current law" or to "change existing underlying policy." JA 106-07 and 687.

Even without the Senate Bill Report's clarification, it is well-settled that absent an express intent to do so, the Maryland Legislature is presumed ***not*** to abrogate or limit the common law when passing a statute:

> The rules of the common law are not to be changed by doubtful implication, nor overturned except by clear and unambiguous language. In order to hold that a statute has abrogated common law rights existing at the date of its enactment, it must clearly appear that they are repugnant to the act, or the part thereof invoked, that their survival would in effect deprive it of its efficacy and render its provisions nugatory.

*Suter v. Stuckey*, 402 Md. 211, 232 (2007) (citing *Lutz v. State*, 167 Md. 12 (1934)). This time-honored deference to the common law when construing statutory enactments is well entrenched in Maryland jurisprudence. One court aptly noted that "the spirit with which the law approaches the possible erosion of the common law … can best be understood when … remember[ing] that the common law of England is constitutionally guaranteed to the citizens of Maryland." *Anderson v. State*, 61 Md. App. 436, 449 (1984). This basic constitutional precept underlies the rule that statutes are to be construed in reference to traditional principles existing at the time of their adoption. *Id.* (holding that "in enacting our very charter of liberty [Maryland] provided 'That the

Inhabitants of Maryland are entitled to the Common Law of England'… and we do not lightly—by mere implication—dissolve so venerable a guarantee").

The "existing law at the time of [§ 13-601's] enactment" (*Suter*, 402 Md. at 232) recognized principles of *respondeat superior* to limit the liability of an employer for the tortious or criminal actions of its employees. *See Dhanraj v. Potomac Elec. Power Co.*, 305 Md. 623, 627 (1985) ("This doctrine, which has long been recognized in Maryland, holds an employer vicariously liable for the tortious conduct of an employee when the employee is acting within the scope of the employment relationship.") (citing *Embrey v. Holly*, 293 Md. 128, 134-36 (1982)). Neither the text of the Maryland Private Detective Statute nor the legislative history is repugnant to the application of the common law. The phrase "while … conducting the business of the agency" is entirely consistent with a scope of employment limitation, and is an acceptable lay person's formulation of the more legalese "scope of employment" verbiage. Because the rule is to construe the statute consistently with the common law unless the Legislature specifically and expressly intended to the contrary, SSA's interpretation of the phrase "while … conducting the business of the agency" as a scope of employment limitation reconciles (1) the Statute's plain language, (2) with the legislative intent not to change existing underlying policy and (3) with the common law backdrop against which the Statute was enacted. Nothing in the Statute's legislative history

compels a contrary result. *See* JA 108 ("The wording of [the Statute] can plausibly be read to mirror the common law, not to clearly conflict with it.").]   As the District Court correctly held, "Maryland's presumption that state statutes enact common law unless they explicitly state otherwise clearly undermines [Appellants'] argument."   JA 108.   Accordingly, the District Court's grant of summary judgment should be affirmed.

### C.   The Cases That Appellants Cited From Other Jurisdictions Do Not Change The Statute's Plain Meaning

In the summary judgment briefing, Appellants cited two cases that interpret security guard licensing statutes to impose strict liability on employers for the intentional actions of their employees committed while the employees were on duty:  *Simmons, Inc. v. Pinkerton's, Inc.*, 762 F.2d 591 (7th Cir. 1985) (interpreting section of Indiana detective license law)[9] and *Stewart Warner Corp. v. Burns Int'l Sec. Servs., Inc.*, 353 F. Supp. 1387 (N.D. Ill. 1973) (interpreting provision of the Illinois Detective's Act).[10]   At the same time, Appellants argued that the cases

---

[9] The statute at issue in the *Simmons* case states:  "Such a licensee is civilly responsible for the good conduct of each employee while he is acting on behalf of the licensee."  *Simmons*, 762 F.2d at 595 (citing Ind. Code § 25-30-1-11).

[10] The statute at issue in the *Stewart Warner* case states:  "The holder of a certificate of authority who employs persons to assist him in the work of private detective and in the conduct of such business shall at all times during such employment be legally responsible for the good conduct in the business of each and every person so employed."  *Stewart Warner*, 353 F. Supp. at 1389 (citing Ill. Rev. Stat. ch. 38, § 201-10b(10)).

cited by SSA — *Borg-Warner Protective Services Corp. v. Superior Court*, 89 Cal. Rptr. 2d 687 (Cal. Ct. App. 1999) (interpreting provision of California Private Security Services Act)[11] and *Hoover Ball & Bearing Co. v. Pinkerton's, Inc.*, 500 F. Supp. 673 (W.D. Mich. 1980) (interpreting section of Michigan Private Security Guard Act)[12] — were irrelevant because the cases interpreted "good conduct" language which is not present in the Maryland Security Guard Act. SSA similarly responded that each of the cases Appellants relied upon construed statutes that had this same distinguishing language. Ultimately, the District Court agreed that "[n]one of the statutes in those cases are nearly identical to the language at issue in this case, because these statutes contain 'good conduct' language which the Maryland Code does not." JA 109. Additionally, the District Court agreed with SSA that the cases that found the statutes imposed broader liability than the common law can be distinguished from this case. JA 109-10. The District Court's conclusion is correct.

---

[11] The statute at issue in the *Borg-Warner* case stated: "A licensee shall at all times be legally responsible for the good conduct in the business of each of his or her employees or agents, including his or her manager." *Borg-Warner*, 89 Cal. Rptr. 2d at 689 (citing Business and Professions Code § 7582.15).

[12] The statute at issue in the *Hoover Ball & Bearing* case stated: "A licensee may employ as many persons as he deems necessary to assist him in his work as alarm system contractor or private security guard or agency and in the conduct of his business, and at all times during the employment may be accountable for the good conduct in the business of each person so employed." *Hoover Ball & Bearing*, 500 F. Supp. at 675 (citing MCLA 338.1067(1)).

The *Borg-Warner* case, which is the most recent of the security guard statute cases cited and which had the benefit of the other decisions when construing California's statute, articulated the distinction that is relevant here.  As is the case in Maryland, California's principles of statutory construction follow the rule that "statutes are not presumed to alter the common law unless expressly stated." *Borg-Warner*, 89 Cal. Rptr. 2d at 689.  Because the common law in California, like that in Maryland, limits an employer's vicarious liability, *Borg-Warner* construed the "in the business" qualifier in accordance with common law principles and harmonized the statute with the established scope of employment limitation.  *Id.* at 690 ("[w]e must presume that the Legislature intended no change in the common law" when it enacted the Act.).

Moreover, the *Borg-Warner* Court observed that the Illinois statute at issue in the *Stewart Warner* case was enacted in response to a prior decision, *Apex Smelting Co. v. Burns*, 175 F.2d 978 (7th Cir. 1949), which found that a detective agency was not liable for the intentional act of an employee.  *Borg-Warner*, 89 Cal. Rptr. 2d at 691.  *Stewart Warner* construed the Illinois statute in the context of what it perceived to be a legislative reaction to the court's prior decision in *Apex Smelting*.[13]  *Id.*; *see also Stewart Warner*, 353 F. Supp. at 1390.  In contrast,

---

[13] This is probably why the Court of Appeals for the Seventh Circuit did not cite to its prior *Apex Smelting* decision (which had been called into question) when deciding *Simmons*, but rather adopted the analysis of the *Stewart Warner* decision.

Appellants proffer no reason to construe the Maryland Statute as changing the application of the common law doctrine of vicarious liability in Maryland, and the cases that they reference do not support doing so.[14]

In sum, the District Court could not "find a sufficient basis for imposing strict liability in the plain language and legislative intent of [the Statute]." JA 110. Instead, the District Court's interpretation of the Statute construed the plain meaning of the phrase "while … the employee is conducting the business of the agency" to mean ***what it says, consistent with the common law that informed its enactment.*** To adopt Appellants' view would render a security company liable for any and all tortious or criminal acts committed while an employee was "on duty," which is neither the intent of the plain language nor consistent with a reasonable reading of it. Accordingly, the District Court's rulings dismissing Appellants' claims under the Statute should be affirmed.

---

[14] Another logical flaw in Appellants' analysis is that the cases that they relied upon, *Simmons* and *Stewart Warner*, both interpreted statutes that had a limitation that the employer was "civilly responsible" or "legally responsible" for the licensee's conduct. These cases interpreted statutes which by their own terms excluded criminal liability from the statutes' scope. Those holdings are not transferable to the present context, and conflict with Appellants' insistence that an employer is liable for any act committed "while on duty."

## II. THE NEGLIGENCE-BASED CLAIMS WERE PROPERLY DISMISSED BECAUSE APPELLANTS DID NOT OWN PROPERTY AND WERE NOT WITHIN THE ZONE OF DANGER AT THE TIME OF THE ARSONS

### A. Appellants' Standard Of Care Arguments Are Irrelevant To The District Court's Dismissal Of The Negligence-Based Claims

While Appellants spent the majority of this section of their Opening Brief discussing how SSA may have breached the standard of care in hiring, training and supervising guards at Hunters Brooke, SSA has stated unequivocally from the onset its recognition that the standard of care was in dispute and that it was not moving for summary judgment on that ground. In addition, the fact that the District Court entertained and rejected the foreseeability arguments does not alter the ultimate decision as to the absence of legally recoverable damages. SSA recognized that there were factual questions that could not be resolved on summary judgment on the issue of duty and standard of care. In their zeal to hold SSA liable on a perceived breach of the standard of care, Appellants missed the point of SSA's motion for summary judgment and the District Court's ruling dismissing the negligence-based claims. There is no factual dispute (or legal) as to the ***nature of the damages*** that Appellants claim; specifically, emotional distress and economic loss damages. As discussed below, emotional distress damages are not recoverable against SSA under a negligence theory. Further, economic loss damages are similarly not recoverable under a negligence theory absent contractual privity. Accordingly, as a matter of

23

law, neither emotional distress nor economic loss damages (the only two types of damages Appellants asserted) are recoverable under a negligence theory, even if all the other elements of a negligence claim can be proven.

**B.    Appellants Not Living At Hunters Brooke At The Time Of The Arsons Were Not In The Zone Of Danger, Did Not Suffer Property Damage And, Thus, Cannot Recover Emotional Distress Damages Under A Negligence Theory**

The District Court dismissed Appellants' negligence claims because "[Appellants] did not live in Hunters Brooke at the time of the arson and were not in the zone of danger on the night of the arson." JA 172. The District Court noted that "[c]urrently, Maryland law does not entertain a tort for negligent infliction of emotional distress." *Id.* (citing *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1065 (1986) ("[Appellants] argue that … Maryland recognizes, at least implicitly, a cause of action for negligent infliction of emotional distress. They are wrong.")). Significantly, the District Court dismissed Appellants' claims against SSA for intentional infliction of emotion distress ("IIED"), and that ruling is not the subject of Appellants' appeal. *See* JA 124 (the alleged negligence against SSA "is not enough to pass the standard for intentional or reckless conduct for IIED in Maryland."); and 172. To allow Appellants to seek recovery for emotional distress under their negligence claims would eviscerate the high standard that Maryland imposes on IIED claims. It would abrogate Maryland's rejection of such a claim, and essentially create a new tort.

24

Consequently, the District Court properly noted Appellants were left with negligence claims for emotional harm. JA 172. "However, [Appellants] did not live in Hunters Brooke at the time of the arson and were not in the zone of danger on the night of the arson. [Appellants] did not suffer property damage because they had not closed on the homes and thus did not own the properties at the time of the arson." *Id.* (footnote omitted) Accordingly, the District Court noted that "even if the Court were to agree with [Appellants] that the exception[15] allowing

---

[15] It is black letter law in Maryland that emotional distress damages "are not recoverable at all where the tortious injury is only to property." *Hoffman v. Stamper*, 385 Md. 1, 36, 867 A.2d 276, 297 (Md. 2005) (citing *Zeigler v. F St. Corp.*, 248 Md. 223, 235 A.2d 703, 705 (1967); *see also Dobbins v. Wash. Suburban Sanitary Comm'n*, 338 Md. 341, 345-46 (1995) (plaintiffs cannot recover for emotional injury caused by learning about negligently inflicted damage to their property); *Abbott v. Forest Hill State Bank*, 60 Md. App. 447, 455 (1984); *State, for Use of Aronoff v. Baltimore Transit Co.*, 197 Md. 528, 538 (1951). As the District Court noted, "[o]rdinarily there is no recovery for mental suffering related to property damage." JA 123 (citing *Zeigler*, 268 Md. at 26). The District Court further noted, "[t]here are two exceptions: mental suffering inspired by fraud and mental suffering inspired by malice." JA 123. Accordingly, "[t]o recover, the plaintiff must allege either notice of the mental distress on the part of the defendant or that the act was calculated to cause mental distress." *Id.* (citing *Abbott*, 60 Md. at 455-56). However, in this case, this Court has already ruled that Appellants cannot show that any of SSA's alleged negligent hiring, training or supervision was inspired by "fraud" or "malice." JA 171.

Appellants repeatedly conflate SSA with the individual defendants and confuse negligence with intentional destruction of property. This approach creates a hybrid tort, which improperly enables Appellants to overlay the individual defendants' intentional torts and criminal activity upon the direct negligence claims against SSA. This is a transparent attempt to circumvent the limitation on emotional distress and economic loss damages. Appellants are not entitled to mix and match *prima facie* elements of their various causes of action against separate

25

negligence claims for emotional harm based on property damage in a case like this one, the proper party to bring such a claim would be the one holding legal and equitable title to the properties at the time of the arson." *Id.* Significantly, "[t]his party was the Developer, and in fact, the Developer did bring a claim against SSA and the parties have settled." *Id.*[16]

Appellants did not own the property at the time of the arsons and therefore lacked standing to bring a negligence claim for property damage. *Gates v. Sprint Spectrum, L.P.*, 523 F. Supp. 2d 1287, 1289 (D. Kan. 2007) ("A cause of action for injury to property belongs to the person who owns the property at the time of the injury."). Because they had not closed, the only property interest that Appellants potentially could have asserted at the time of the fires was dependent upon equitable conversion. Under Maryland law, the doctrine of equitable conversion:

> 'is a theoretical change of property from realty to personalty, or *vice versa*, in order that the intention of the parties, in the case of a contract of sale . . . may be given effect.' . . . '[w]hen the vendee contracts to

---

defendants to avoid having their negligence claims struck. A defendant cannot negligently cause emotional damages where a third party committed an intentional act which resulted in emotional harm. The law, and common sense, dictates that the harm must be attributable to the negligent party. *See Zeigler*, 248 Md. at 226 (holding that "by law the Plaintiffs' claims for mental anguish and emotional upset *cannot be chargeable to the Defendant*") (emphasis added). As a result, Appellants' entire discussion of the "foreseeability" of emotional harm based on the intentional conduct of a different defendant is irrelevant.

[16] As discussed *supra*, Appellants obtained certain compensation from the Developer following the arsons.

buy and the vendor to sell, the legal title has not yet passed, in equity the vendee becomes the owner of the land, the vendor of the purchase money.'

*White v. Simard*, 152 Md. App. 229, 247, 831 A.2d 517, 528 (2003) (citations omitted), *aff'd*, 383 Md. 257, 859 A.2d 168 (2004).   Equitable conversion, however, is often prevented by contract.  As *Simard* stated:

> It is rather universally recognized that the parties to a contract of sale for real property may allocate the risk of loss for ***fire*** or other casualty occurring before the actual transfer of the legal title . . . .  ***If the contract allocates the risk to the vendor, then the doctrine of equitable conversion, which places the risk of loss on the purchaser, is no longer applicable.***

*Id.* at 248, 831 A.2d at 528 (emphasis added).

In this case, Appellants merely had an executory agreement of sale with the Developer.  These contracts stated:

> All risk of loss or damage to the Property by ***fire***, windstorm, casualty or other cause, or taking by eminent domain, is assumed by Seller until settlement.

JA 196 (emphasis added).   Because the Developer assumed the risk of loss, equitable conversion did not occur as a matter of law, and this contractual allocation of risk precluded Appellants from acquiring any property interest prior to settlement.   Appellants would therefore suffer only economic damages (*i.e.*, contract damages measured by loss of the benefit of their bargain) if the Developer did not deliver their houses at closing.  JA 195.  Remedying this economic loss is not the province of tort law.   *Potomac Constructors*, 530 F. Supp. 2d at 737

(applying economic loss rule).  Appellants therefore have no standing to assert a negligence claim for injury to property which they did not own.  *Gates*, 523 F. Supp. 2d at 1289.

The reason Appellants have such difficulty stating a negligence cause of action is that they were not the real parties in interest to bring these negligence counts.  The Developer was the entity that had standing to sue for property damage, because it had both equitable and legal title to the fifteen (15) unsold houses.  The Developer was negotiating the scope of services with SSA, so it was the only one who could colorably allege a "negligent breach of contract."  Because the Developer was in privity with SSA, it could also assert economic loss damages.  The Developer, then, was the proper party to bring a negligence claim against SSA.

The Developer was also the proper defendant for Appellants' claims, if any.  The Developer alone was in privity with Appellants, so Appellants' economic damages were recoverable only from the seller with whom Appellants were in privity.  In fact, the District Court noted that the Developer offered to compensate[17] Appellants and used insurance proceeds to make repairs.  JA 093.  The Developer

---

[17] The Developer also offered to void the contracts of at least twenty-eight (28) of the Plaintiffs.  JA 261-306.  No plaintiff accepted this offer.  In light of the District Court's dispositive ruling as to no cause of action related to available damages, the issue of waiver — based on the decision to go forward with the purchase post-arsons — was never reached.

(or its subrogees) in turn sued SSA to recover those payments. SSA settled the Developer's suit, without admitting liability. Appellants are now suing SSA again for those same damages.[18] Appellants, however, do not have standing to assert separate contract-based claims (under the guise of negligence claims) which were properly those of the Developer and which have already been resolved.

In sum, the District Court concluded, "[Appellants] suffered economic damages under their contracts with the Developer as a result of the arson rather than property damages." JA 172. As such, the District Court declined "to take the significant steps of: (1) interpreting the exception allowing emotional harm damages for destruction of property to apply here, where SSA committed no fraud or malice; and (2) finding the exception to apply here, where [Appellants] have no property damage claims in the first place." JA 173. Moreover, the District Court held that "it would not be foreseeable to SSA that its negligent acts would expose it to liability for emotional harm of [Appellants] who were neither in the zone of danger at the time of the arson nor suffered property damage as a result of the

---

[18] Lest there be any doubt that Appellants are merely reasserting the Developer's negligence count that previously has been settled, compare Plaintiffs' Amended Complaint at Count VI with the Complaint styled *Axis Specialty Europe Ltd.*, *as Subrogee of Patriot Homes, Inc. and U.S. Home Corporation et al. v. Security Services of America, LLC*, Civil Action No. AW-05-2003, at Count I (JA 390-91) which shows that the alleged acts of negligence are virtually identical, although in places simply reordered.

arson."[19]  *Id.*  Thus, the District Court properly granted summary judgment to SSA as to the negligence-based claims (Counts V, VI and VII) brought by the thirty Appellants who did not yet own property or live in Hunters Brooke at the time of the arsons.  JA 175.

## III.  THE DISTRICT COURT PROPERLY DENIED APPELLANTS' MOTION TO CERTIFY A QUESTION TO THE MARYLAND COURT OF APPEALS

### A.  The District Court Did Not Abuse Its Discretion In Denying Appellants' Request For Certification

As it is clear that the District Court properly interpreted the Maryland Security Guard Act, this Court should also affirm the District Court's determination that certifying the question to the Maryland Court of Appeals was unnecessary, dilatory and a waste of resources.[20]   JA 158-60.    Appellants'

---

[19]  The District Court did not grant judgment as to the now-settled plaintiffs who resided in the development at the time of the arson.  The District Court noted that the Rookard/Potts family awoke to the smell of smoke, saw the fires in the neighboring homes, and felt the heat of the flames as they made their way out of the neighborhood.  The District Court concluded that family's fear of harm was reasonable.  None of that is true for any of the Appellants herein, each of whom resided outside of Hunters Brooke.  SSA has resolved the claims with the two residents and the Developer, the only proper plaintiffs under the facts and law.

[20]  Appellants suggest the delay associated with certification is not a sufficient basis for denying their request; however, their assertion is nothing more than *ipse dixit*.  *See* Appellee's Opening Br. at 55.  This case was filed in 2005.  All the federal claims were dismissed on March 31, 2010, as to SSA and there were no claims common with the individual defendants.  If Appellants were concerned about a statutory interpretation by a Maryland state court, the case should have been

conclusory assertion that the District Court's rationale "does not pass muster" is insufficient to overturn the District Court's discretionary decision.[21]    *See* Appellants' Opening Br. at 53.

Moreover, Appellants cannot meet their burden under Maryland's certification provision, which states, in pertinent part:

> [t]he Court of Appeals of this State may answer a question of law certified to it by a court of the United States or by an appellate court of another state or of a tribe; if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State.

Md. Code Ann., Cts & Jud. Proc. § 12-603 (2010).  In essence, an issue must be both novel and case determinative before a court can even consider exercising its *discretion* to certify a question.  Here, Appellants' question is neither novel, nor determinative, thus, this Court should reject Appellants' invitation to expand the doctrine of certification and affirm the district court's decision and deny Appellants' renewed request to certify the question.

---

transferred to state court at that time or, at the very latest, when Appellants decided to dismiss, voluntarily, all of the individual defendants.

[21] Appellants principally assert the District Court did not adequately consider *Johnson v. Collins Entm't Co., Inc.  See* Appellant's Opening Br. at 53.  However, Appellants ignore two important points.  First, the decision to certify a question is purely discretionary.  A court need not provide a full analysis of every case cited by the proponent of certification before denying the request.  Second, despite the fact that no case mandates certification, the District Court properly distinguished *Johnson*.  Unlike *Johnson*, the case *sub judice*, is based on the procedure for certifying a question in Maryland, not the abstention doctrine.  JA 160.

31

**B.** **Maryland Laws Governing Statutory Construction And Vicarious Liability Are Not Novel And Do Not Require Interpretation By The Maryland Court Of Appeals**

As discussed *supra*, in granting SSA's motion for summary judgment, the District Court correctly concluded SSA was not vicariously liable under the Maryland Security Guard Act. In so concluding, the District Court considered and applied well-established Maryland legal principles governing the rules of statutory construction. JA 104-05.

The District Court applied the "clear and unambiguous everyday meaning of the plain language of the statute," which is consistent with decades of Maryland jurisprudence. JA 104. The District Court also considered that "[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature. The first step in determining legislative intent is to look at the statutory language and 'if the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, [the Court] will give effect to the statute as it is written.'" *Oaks v. Connors*, 339 Md. 24, 35 (1995) (quoting *Jones v. State*, 336 Md. 255, 261, 647 A.2d 1204 (1994)). After applying Maryland's principles of statutory construction, the District Court concluded "[d]efendants persuasively argue that [p]laintiffs' construction violates the Maryland statutory construction rule against adding or taking away language from the statute…" JA 105.

32

The District Court also properly relied upon Maryland's long-standing rule of statutory interpretation that the common law will not be repealed by implication. JA 107. A statute is "not presumed to repeal the common law further than is expressly declared…" *Suter v. Stuckey*, 402 Md. 211, 232 (2007) (quoting *Robinson v. State*, 728 A.2d 698, 702 (1999)). Again, applying the well-established rules, the District Court properly held the language in the Maryland Security Guard Act mirrors, but does not conflict with, the common law. JA 108.

Additionally, affirming the District Court's decision to deny certification is entirely consistent with this Court's prior holdings. In *Brotherhood Mut. Ins. Co. v. McMillan*, the district court was tasked with interpreting an insurance policy. 492 Fed. Appx. 389, 2012 WL 3105150 at *1 (4th Cir. Aug. 1, 2012). The district court granted the insurer's motion for summary judgment. *Id.* On appeal, appellants argued the policy was ambiguous and requested this Court certify the question to the Court of Appeals. *Id.* After applying standard principles of contract interpretation to the policy provisions, this Court held the policy was not ambiguous, denied appellants' request for certification, and affirmed the district court. Like *McMillan*, there was nothing novel about the District Court's approach in this case. In fact, the District Court applied the tried and true method for statutory construction and concluded correctly that any liability of SSA was based

on application of common law principles of vicarious liability, therefore, certification is not necessary.

### C. Appellants' Proposed Certified Question Would Not Be Case Determinative

Contrary to Appellants' assertion, the question posed for certification is not case determinative and should not be certified. Assuming *arguendo* that Appellants' proposed certified question was answered by the Maryland Court of Appeals in their favor (*i.e.*, that security companies are responsible for all acts committed by their employees while on duty), Appellants' claims against SSA were still properly dismissed as a matter of law because there are no recoverable damages under their negligence-based claims. As decided below, Speed's intentional arsons and Fitzpatrick's alleged negligence are insufficient to hold SSA liable for the damages claimed (emotional distress and economic losses) in this case, therefore, certification is futile.

### 1. Speed was off-duty when he committed the intentional arsons that allegedly caused Appellants' claimed damages

Appellants have never disputed that, at the time of the arsons, Speed was not "on duty" or otherwise scheduled to work at Hunters Brooke. *See* JA 069-70; JA 230. Even Appellants' strained and improper interpretation of "while the employee is conducting the business of the agency" to include all acts committed by an employee while on duty does not cover an off-duty employee's arsonist

34

rampage. It continues to be a waste of time and resources to certify a question of law to the Maryland Court of Appeals when the answer is not case determinative. It is time for this seven-plus year old case to be concluded.

### 2. Even if SSA was liable for Fitzpatrick's alleged negligence the damages sought by Appellants are not recoverable as a matter of law

Assuming *arguendo* that SSA is liable for Fitzpatrick's negligence, his negligence also does not entitle Appellants to recover the two categories of damages which they seek in this lawsuit, specifically emotional distress and economic loss damages. As discussed in detail in Section II above, if SSA was liable for all or some portion of Fitzpatrick's negligent abandonment of the Hunters Brooke post, which is denied, then Appellants' remedies would be limited as a matter of law only to those damages recoverable under a negligence theory. *See*, *supra*, Section I-A, fn. 3. Because Appellants' negligence-based claims were properly dismissed as a matter of law for failing to present recoverable damages, the question Appellants seek to certify is moot and Appellants' request should be denied. In addition, if Fitzpatrick was actively involved in the arsons and that is why he left the site, his actions then fall in the same category as Speed's actions. JA 114.

## CONCLUSION

Appellee respectfully requests that this Court affirm the District Court's grant of summary judgment in favor of SSA with respect to the Maryland Security Guard Act and the negligence-based claims.

Respectfully submitted,

/s/ Joseph P. Moriarty
Gary A. Bryant
Joseph P. Moriarty
J. David Crain
WILLCOX & SAVAGE, PC
440 Monticello Avenue, Suite 2200
Norfolk, Virginia  23510
(757) 628-5520

Gerry H. Tostanoski
TYDINGS & ROSENBERG, LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland  21202
(410) 752-9733

*Counsel for Appellee*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*9,188*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[     ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[     ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: May 31, 2013                    /s/ Joseph P. Moriarty
                                                        *Counsel for Appellee*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 31st day of May, 2013, I caused this Brief of

Appellee to be filed electronically with the Clerk of the Court using the CM/ECF

System, which will send notice of such filing to the following registered CM/ECF

users:

Ruthanne M. Deutsch
AKIN, GUMP, STRAUSS,
  HAUER & FELD, LLP
1333 New Hampshire Avenue, NW
Washington, DC  20036

*Counsel for Appellants*

I further certify that on this 31st day of May, 2013, I caused the required

copies of the Brief of Appellee to be hand filed with the Clerk of the Court.

/s/ Joseph P. Moriarty
*Counsel for Appellee*